IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CITIGROUP GLOBAL MARKETS REALTY CORP., ) ) ) Plaintiff, ) ) v. ) ) THE CITY OF MONTGOMERY, ) ) Defendant. ) | CASE NO. 2:09-CV-784-WKW [WO] |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

In 2007, the City of Montgomery ("City") demolished apartment buildings, located at 7 West Delano Avenue, Montgomery, Alabama, having declared them unsafe and a public nuisance. It is undisputed that the City failed to give notice of the demolition to the then-holder of the first mortgage on the property. The issue is whether the City is liable for that failure to Plaintiff Citigroup Global Markets Realty Corp. ("Citigroup"), the assignee of the first mortgage, under state law theories of negligence, trespass and inverse condemnation, and under 42 U.S.C. § 1983 for an unreasonable seizure and deprivation of property without due process of law, in violation of the Fourth and Fourteenth Amendments.

Before the court is the City's Motion for Summary Judgment, which is accompanied by a brief. (Def. Mot. (Docs. # 26-27).) Citigroup filed a response in opposition to the summary judgment motion (Def. Resp. (Doc. # 28)), to which the City filed a reply (Def. Reply (Doc. # 29)). After careful consideration of the arguments of counsel, the relevant

law, and the record as a whole, the court finds that the City's Motion for Summary Judgment is due to be denied.

## II.  JURISDICTION AND VENUE

Jurisdiction is exercised pursuant to 28 U.S.C. § 1332(a) (diversity jurisdiction) and 28 U.S.C. § 1331 (federal question jurisdiction).  The parties do not contest personal jurisdiction or venue, and there are adequate allegations sufficient to support both.

## III.  STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citation and internal quotation marks omitted); *see also* Fed. R. Civ. P. 56.  On summary judgment, the facts must be viewed in the light most favorable to the non-movant.  *See Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002).  Hence, "'facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case.'"  *Id.* (quoting *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000)).

## IV.  BACKGROUND[1]

A. **The City Ordinance Governing Demolitions and Applicable Statutes**

Section 11-53B-1 of the Code of Alabama codifies the Legislature's findings, providing as follows.

> The Legislature finds all of the following:
>
> (1) It is estimated that within the municipalities of the state, there exist several thousand parcels of real property that due to poor design, obsolescence, or neglect, have become unsafe to the extent of becoming public nuisances. Much of this property is vacant or in a state of disrepair and is causing or may cause a blight or blighting influence on the city and the neighborhoods in which the property is located.  Such property constitutes a threat to the health, safety, and welfare to the citizens of the state and is an impediment to economic development within the municipality.  This threat can be minimized if an incorporated municipality is authorized to repair the affected structures and is able to recover the cost of the repairs. In addition, where the municipality has undertaken the demolition of the structures and has taken a lien on the real property for the cost of the demolition, there has not been an effective method for recovering this assessment.  These obligations owed to municipalities have largely been under-performing assets that could be converted to cash, providing the municipalities with much needed revenues.
>
> (2) It is the intent of this chapter to authorize a municipality of the state to proceed with the demolition or repair of a structure based on its own findings, and to set out a method for collecting the assessment liens so imposed.

Ala. Code § 11-53B-1 (2002).

Based upon the authority granted by § 11-53B-1, the City enacted Ordinance No. 44-2006.  (Ord. No. 44-2006 (Ex. 4 to Def. Mot.).)  The Ordinance provides:

---

[1] The facts are largely undisputed but, where disputed, are construed in the light most favorable to Citigroup.

> The Mayor or his designee may, pursuant to . . . § 11-53b-1, Ala. Code 1975, as amended, initiate immediate repair or demolition of a building structure when, in his/her opinion, such emergency action is required due to the imminent danger of structural collapse endangering adjoining property, the public right of way or human life or health. The cost of emergency action shall be fixed by the Council and shall be assessed in accordance with the provision of § 11-53-b-5, Ala. Code 1975, as amended.

(Ord. No. 44-2006.) Section § 11-53B-3 of the Code of Alabama, which sets forth the notice procedures the City must follow prior to a demolition, provides, in pertinent part, that

> [a] copy of all notices, orders, and other communications required by this chapter to be given to the owner of the property, or to the owner of an interest in the property, or to the person last assessing the property for state taxes, also shall be given to all mortgagees of record by certified or registered mail to the address set forth in the mortgage, or if no address for the mortgagee is set forth in the mortgage, to the address determined to be the correct address by the person responsible for the notice or other communication.

Ala. Code § 11-53B-3 (2002).

**B.     The Events Leading up to the Demolition of the Property**

Seven West Delano Avenue, Montgomery, Alabama ("Property"), the Property at issue, is zoned for multi-family housing. Before the demolition, the Property consisted of thirty-four buildings, with each building containing four units, for a total of 136 units. On February 7, 2007, Major Golden, a housing inspector with the City Inspections Department, determined that there were municipal code violations present on the Property, and that fifty-two of the units were unsafe. (File Summary Sheet; Dorian Brunson Dep. 23.) Major Golden maintained a File Summary Sheet, documenting his actions pertaining to the

4

Property.[2]  (File Summary Sheet (Ex. 5 to Def. Mot.); Brunson Dep. 73.)  The File Summary Sheet indicates that on February 12, 2007, an "unsafe notice" from the City was hand delivered, presumably to the Property owner, and that, on April 24, 2007, the owner of the Property made a request to the City to make repairs. (File Summary Sheet.)  A further notation in the File Summary Sheet documents that a repair notice would be sent to the owner. (File Summary Sheet.)  There is no further notation in File Summary Sheet indicating whether a repair notice was sent to the owner of the Property.  (Brunson Dep. 97.)

Also, in June 2007, Major Golden sent at least five notices of demolition ("Notices") by certified mail, return receipt requested, to the Property owner and other interested parties.[3] (Notices (Ex. 2 to Pl. Resp.); Brunson Dep. 85 (explaining that notices are sent by certified mail).)  The Notices, which contain substantially the same text, provided that "the structure located at 7 Delano Avenue . . . has been declared unsafe . . . to the extent it is deemed a public nuisance," and demolition would "be accomplished within 45 days of the date of this notice."  (Notices (Ex. 2 to Pl. Resp.).)  The Notices further set out that

> [w]ithin thirty (30) days from the date this notice is given, any person, firm, or corporation having an interest in the structure may file a written request with the City Clerk's office for a hearing before the City Council, together with any

---

[2] The File Summary Sheet does not detail the specifics of the violations or the repairs required to bring the Property in compliance with the code, and the record does not contain deposition or other testimony from Major Golden.  While the City cites pages 23 and 24 of Ms. Brunson's deposition as explaining the procedures the housing inspectors follow to determine wehther a building is unsafe, those pages of Ms. Brunson's deposition were not submitted by the City and are not otherwise part of the record.  (Pl. Resp. 2 (citing Brunson Dep. 23-24).)

[3] Four of the Notices are dated June 12, 2007, and one is dated June 1, 2007.

5

objections to the finding by the Chief Building Official that the structure is unsafe to the extent of becoming a public nuisance.

(Notices (Ex. 2 to Pl. Mot.).) There is no evidence that a hearing was held.[4]

On August 7, 2007, fifty-six days after the latest date on the Notices, the Montgomery City Council held its regular session. As reflected in the Montgomery City Council's minutes from its regular session, the council voted unanimously "to authorize the demolition of an unsafe structure at 7 Delano Street." (Ex. 6 to Pl. Resp.)

The demolition commenced on or about August 21, 2007, and was completed on or about September 12, 2007. (File Summary Sheet.) Fifteen of the thirty-four apartment buildings, located at 7 West Delano Avenue, were demolished. Prior to the demolition of the units, the Property had an appraised value of approximately $1.5 million. Subsequent to the demolition, the Property's value was reappraised at approximately $300,000. (William A. Fogleman Aff. 2 (Ex. 3 to Pl. Resp.).)

C. **The City's Undisputed Failure to Provide the First Mortgagor a Demolition Notice**

At the core of this litigation is the undisputed failure of the City to send a demolition notice to Velocity Commercial Capital, LLC ("Velocity"). (Brunson Dep. 58 (Ex. 1 to Def.

---

[4] The Notice dated June 1, 2007, was sent to the owner of the Property, Robert Gomez. In its summary judgment response, Citigroup contends that Mr. Gomez timely requested, but was denied, a hearing to "discuss/dispute the demolition of the property located at 7 W. Delano Ave., known as Delano Townhomes." (Mr. Gomez's Letter (Ex. 4 to Pl. Resp.); Pl. Resp. 2-3.) Allegations pertaining to the denial of a hearing to Mr. Gomez are not contained in the Amended Complaint, and none of the claims hinge liability on such allegations.

Mot.).) Prior to and during the demolition, Velocity was the holder of the first mortgage on the Property, which had been duly recorded in the Montgomery County Probate Court. (Fogleman Aff. 1-2.) At all times material to this litigation, Litton Loan Servicing LP ("Litton") serviced Velocity's first mortgage and note, pursuant to a servicing agreement. (Fogleman Aff. 1.)

D.     **Velocity's Assignment of the First Mortgage to Citigroup**

On October 5, 2007, less than a month after the demolition, Velocity assigned its interest in the first mortgage to Citigroup. (Assignment of Mortgage (Ex. 7 to Pl. Resp.).) Litton continued to service the first mortgage until September 1, 2009. (Fogleman Aff. 2.)

E.     **Litton's Letter to the City Clerk**

In a letter dated January 4, 2008, counsel for Litton apprised the clerk that he was writing on behalf of two of his clients, one being Litton, pursuant to § 11-47-23 of the Code of Alabama.[5] The stated purpose of the letter was to put the City "on notice" of claims for damages suffered by Litton "as a result of the unwarranted demolition of improvements located at [7 West Delano Avenue, Montgomery, Alabama]," which the City "authoriz[ed]" on August 7, 2007. (Jan. 4, 2008 letter (Ex. 11 to Pl. Resp.).) The letter continued:

> This demolition did take place on or about August 21, 2007, at which time fourteen (14) buildings on the property were demolished due to compliance issues. On or about October 17, 2007, the City placed a lien against the property for payment of the demolition costs of $103,000.00 and an additional lien in the amount of $60,000.00 for past due water service.

---

[5] The other client, Credit Based Asset Security and Securitization, is not mentioned by either party as having any import to the claims asserted in this litigation.

7

> However, it is my clients' position that the City failed to give notice to them of the demolition as required under Section 5-33 of the Montgomery Municipal Code. Therefore, the aforementioned demolition gives rise to several claims by my client[s] against the city including, but not limited to unlawful taking/condemnation, trespass, slander of title, and possible violations under 42 U.S.C. Section 1983.

(Jan. 4, 2008 letter.)

**F.**     **Citigroup's Redemption of Its Interest in the Property**

On October 17, 2007, a lien against the Property for payment of the demolition costs in the amount of $103,000 was recorded in the Montgomery County Probate Court. (Ex. 8 to Pl. Resp.) On or about April 1, 2008, a tax certificate was issued to Equifunding, Inc. by the Montgomery County Probate Judge, in exchange for payment of delinquent taxes owed on the Property. (Ex. 9 to Pl. Resp.) Citigroup's interest in the Property was redeemed on or about August 21, 2009, by payment of $180,680.22 to the Montgomery County Revenue Commissioner. (Ex. 10 to Pl. Resp.)

**G.**     **This Lawsuit**

Citigroup filed suit on August 19, 2009, claiming the City failed to properly notify Velocity of the condemnation and demolition of the property and that, as a result, Citigroup (as the assignee) was injured. (Compl. (Doc. # 1).) In the governing amended complaint, Citigroup brings state law claims against the City for negligence for failing to provide it notice prior to the demolition of the Property (Count One), for trespass (Count Two), and for inverse condemnation (Count Four). (Am. Compl. (Doc. # 4).) It also brings a federal law claim pursuant to 42 U.S.C. § 1983 (Count Three), alleging that the City's "demolition of

8

[Citigroup's] collateral constitute[d] an unreasonable seizure of the property," in violation of the Fourth Amendment, and the City's failure, "by and through its employees, to provide notice of demolition to the first mortgagee," as required under Alabama statute, "resulted in a denial of due process," in violation of the Fourteenth Amendment. (Am. Compl. ¶ 20.) Citigroup requests compensatory damages for the diminution in value of the Property resulting from the demolition, and costs, to include attorney's fees. The City responded by filing a motion to dismiss (Def. Mot. (Doc. # 8)), which was denied on November 19, 2009 (Doc. # 15).

Following discovery, the City filed the present Motion for Summary Judgment, which has been fully briefed. The reason Velocity did not receive notice of the demolition was explored during discovery, but remains somewhat unclear. The City makes an unsupported assertion that the failure was "due to an oversight." (Def. Mot. 3; *see also* Def. Mot. 8-11.) Citigroup, on the other hand, argues that the reason it did not receive notice of the demolition is because the City failed to provide any training to its housing inspectors in proper procedures for conducting title examinations. (Pl. Resp. 2, 10-11.) Citigroup relies upon Ms. Brunson's testimony. Ms. Brunson testified that title examiners are not hired by the City (Brunson Dep. 35), but rather the housing inspectors conduct searches of the records at the tax revenue's office and the probate office to ascertain "all owners and mortgagees" of a property. (Brunson Dep. 19.) Ms. Brunson responded, "I don't know," when asked whether the housing inspectors are provided any training on conducting title examinations. (Brunson

9

Dep. 35.) In rebuttal, the City quotes Ms. Brunson as also testifying that the housing inspector "works with the City's legal division to determine who's the owner." (Def. Reply 3 (citing Brunson Dep. 87-89).) This testimony, however, cannot be considered because the City did not submit the deposition testimony.[6]

In support of its argument that the training is inadequate, Citigroup has submitted an affidavit from Sean Coley ("Coley"), the owner and manager of Guarantee Title Company in Mobile, Alabama. Mr. Coley attests that title examiners with Guarantee Title Company receive "specific training, instruction and experience to enable them to properly and accurately examine the chain of title relevant to a parcel of real property," and are required to complete an apprenticeship with an experienced title examiner. (Coley Aff. 1.) A one-to-two year apprenticeship, he "believe[s]," is standard in the industry. (Coley Aff. 1.) Mr. Coley opines that "failure to follow . . . a similar training process . . . will likely result in a higher margin of error for those examining title." (Coley Aff. 2.)

## V. DISCUSSION

The City contends that Citigroup lacks standing under Article III, § 2, of the United States Constitution, that Citigroup failed to file a claim with the City clerk within six months of the accrual of its state law causes of action, *see* Ala. Code § 11-47-23, that Citigroup did not comply with the statute governing municipal tort liability, *see* Ala. Code § 11-47-190,

---

[6] Pages 87-89 of Ms. Brunson's deposition testimony are not in the record. If the report of the testimony in briefing is correct, however, the statement is at best incomplete and ambiguous as an explanation of the oversight.

and that an isolated incident of failing to notify a mortgagee of a demolition is insufficient to establish a municipal custom or policy, as required under § 1983. (Def. Mot. (Doc. # 27).) Each ground will be addressed.

A.  **Whether Citigroup Has Article III Standing**

The City argues that Citigroup cannot claim an "interest or right in the Property at the time of demolition" because the demolition occurred "prior to Velocity's assignment of its mortgage to . . . Citigroup." (Def. Mot. 4-5.) Accordingly, the City contends that Citigroup did not suffer an "injury in fact" and, thus, has no standing to sue. (Def. Mot. 4-5.)

If the City's argument sounds familiar, it is because the City raised the same contention in support of its previously filed motion to dismiss. Rejecting the identical argument, the court found that, pursuant to the mortgage's terms, Velocity's right of action "arising from the City's demolition of certain housing units on the Property passed to Citigroup on October 5, 2007, upon the assignment of the mortgage." (Nov. 19, 2009 Mem. Op. & Order 6 (Doc. # 15).) Because no evidence has been cited or reason advanced by the City that causes the court to question its prior ruling, the City's argument again is rejected.

B.  **Whether Citigroup's State Law Claims Are Statutorily Barred Under § 11-47-23 of the Code of Alabama**

The City asserts that Citigroup's state law claims are barred by the notice-of-claim requirements set out in § 11-47-23 of the Code of Alabama.[7] (Def. Mot. 6.) Section

---

[7] The claim notification requirements set forth in § 11-47-23 do not apply to 42 U.S.C. § 1983 claims. *See Acoff v. Abston*, 762 F.2d 1543, 1546 (11th Cir. 1985).

11-47-23, titled "Limitation periods for presentation of claims against municipalities," provides that

> [a]ll claims against the municipality (except bonds and interest coupons and claims for damages) shall be presented to the clerk for payment within two years from the accrual of said claim or shall be barred. Claims for damages growing out of torts shall be presented within six months from the accrual thereof or shall be barred.

Ala. Code § 11-47-23. The purpose of § 11-47-23 "'is to give notice of a claim in order that the municipality may *investigate and determine the merits* of the claim.'" *Etherton v. City of Homewood*, 741 So. 2d 1078, 1081 (Ala. 1999) (quoting *McCarroll v. City of Bessemer*, 268 So. 2d 731, 736 (1972)); *see also Large v. City of Birmingham*, 547 So. 2d 457, 458 (Ala. 1989) ("It is well established that filing a statutory notice of claim provides sufficient notice to allow city authorities to have an opportunity to investigate the circumstances of an alleged injury, so as to prepare the city's defenses or to negotiate a settlement."). Section 11-47-23, therefore, serves in part to "relieve municipal officials of any duty to *guess* at the intentions of prospective claimants." *Etherton*, 741 So. 2d at 1082. Given the purposes assigned to the statute, the Supreme Court of Alabama has held that substantial compliance, not strict compliance, with § 11-47-23 is all that is required. *Diemert v. City of Mobile*, 474 So. 2d 663, 666 (Ala. 1985) (holding that cities could not complain that relatively minor deficiencies in claims prevented them from acquiring knowledge of actions pending against them); *see also Etherton*, 741 So. 2d at 1081 (comparing notice of a claim under § 11-47-23 to notice required in a judicial complaint).

The City argues that the January 4, 2008 letter – giving notice of Litton's claims against the City for damages suffered "as a result of the unwarranted demolition of improvements located at [7 West Delano Avenue, Montgomery, Alabama" – although "timely filed in [Litton's] name," is invalid because Litton had no ownership interest in the Property and, thus, "could not have possibly suffered damage from [the] City's demolition." (Def. Mot. 7.)  Alternatively, the City argues that Litton's claim is not a substitute for Velocity's failure to file a claim in its own name with the City clerk within six months of the accrual of its alleged state law claims. (Def. Mot. 7.)  The City deems it fatal to the claims in this suit that the January 4, 2008 letter does not mention Velocity, does not indicate that the claim was being made on behalf of Velocity, and does not refer to Velocity's mortgage or interest in the property.  According to the City, this letter is insufficient to place it on notice that Velocity was claiming an injury.

Citigroup, on the other hand, argues that the City's position does not comport with "general agency principles" or § 11-47-23's purposes. (Pl. Resp. 8.)  It further argues that the claim filed by Litton adequately placed the City "on notice of the alleged negligence, so as to give it sufficient details and time to investigate the claim and settle with the claimant." (Pl. Resp. 8.)

The court already has found that, as the assignee of Velocity's first mortgage on the Property, Citigroup stands in the shoes of Velocity, thereby assuming all of Velocity's rights and interests it has in the causes of actions asserted, and that issue will not be revisited here.

13

(Nov. 19, 2009 Mem. Op. & Order.) The salient issue here turns on whether Litton's letter to the City clerk substantially complies with § 11-47-23 as to *Velocity*'s claim against the City. As will be explained, if the letter is sufficient as to Velocity, it is sufficient as to its assignee, Citigroup.

The City focuses on the fact that Litton, not Velocity, is the only entity named in the January 4, 2008 letter. This focus is overmagified for two reasons. First, on this record, the City's argument elevates form over substance. The January 4, 2008 letter clearly apprised the City Clerk of the what, where, when and how.[8] The letter set forth the street address of the damaged Property (7 West Delano Avenue, Montgomery, Alabama) and described the nature of the damages (demolition of fourteen buildings on the Property). It set out the date the demolition was authorized (August 7, 2007), the date the demolition commenced (August 21, 2007), the entity that authorized the demolition (the City), the existence of a lien placed on the Property for payment of the demolition costs, the amount of that lien ($103,000), and the entity that placed the lien on the Property (the City). Furthermore, the letter explained Litton's basis for believing that the City caused it injury (failure of the City to give it notice of the demolition), described the nature of potential legal claims (unlawful taking, trespass, slander of title and violations of § 1983), and provided the statute under which relief was sought (Alabama Code § 11-47-23). Additionally, contact information for Litton's attorney – including the attorney's name, his firm, a mailing address, and telephone and fax numbers

---

[8] The "who" will be taken up below.

– was provided in the letter. All of this information gave adequate notice to the City to permit it to investigate all avenues of the claim, to include the month, day and year of the demolition, the physical location of the damaged Property, the nature of the damage, and the theories of the City's potential liability.

Second, while § 11-47-23 contains no language as to *who* must file the claim against the City for damages, there is ample authority that "[a]n agent may direct the legal affairs of its principal." *In re O'Dell*, 268 B.R. 607, 613 (N.D. Ala. 2001) (citing *Howard v. McCarson*, 215 Ala. 251 (Ala. 1926)). And Citigroup has submitted evidence that, on January 4, 2008, Litton serviced the first mortgage and note pursuant to a servicing agreement between it and Velocity. (Fogleman Aff. 1.) There is, therefore, evidence of an agency relationship between Litton and Velocity. Although the specific terms of the servicing agreement are not discussed in Fogleman's affidavit or elsewhere in the summary judgment record, there is no evidence that refutes the proffered agency relationship between Velocity and Litton. Also, noticeably absent in the City's brief is any citation of authority for its proposition that Litton could not act on behalf of Velocity in asserting a claim for damages against the City. Moreover, and relatedly, the City offers no evidence or argument that the identity of Litton's principal or the agency relationship was not readily discernable through a simple communication with Litton's attorney, whose name, address, and telephone number were provided in the letter. Indeed, it is difficult to imagine what further information the City needed to commence an investigation of the claim asserted against it; in other words,

15

no guesswork was required on the part of the City to discern the intentions of Litton. Moreover, the City has failed to demonstrate prejudice resulting from what it deems to be a faulty notice of claim.

In sum, § 11-47-23 is designed to put a municipality on notice of a damages claim, and the purpose of the statute was fulfilled by the January 4, 2008 letter. The letter provided sufficient information to permit the City an opportunity to address Litton's claim internally and to resolve it before being sued. Because the City has failed to demonstrate that Litton's letter was insufficient to put it on formal notice of the state law claims made the subject of this lawsuit, it is not entitled to summary judgment.[9]

C.  **Whether Citigroup's Claims Against the City of Montgomery Are Barred Pursuant to § 11-47-190 of the Code of Alabama**

In its summary judgment brief, the City argues that Citigroup's Amended Complaint fails to name an "agent, officer, or employee" of the municipality who caused injury to the Property and, therefore, Citigroup failed to plead the statutory requirements of § 11-47-190. (Def. Mot. 8.) Section 11-47-190 provides, in relevant part:

> No city . . . shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or

---

[9] Citigroup also argues that, pursuant to *McClendon v. City of Boaz*, 395 So. 2d 21 (Ala. 1981), § 11-47-23's two-year limitations period (not the six-month limitations period) applies to inverse condemnation claims, and that the Amended Complaint, which added the inverse condemnation claim within two years of the Property's demolition, satisfies § 11-47-23's presentment to clerk requirement. Based upon the findings above, it is unnecessary to address this alternative argument specific to the inverse condemnation claim.

employee of the municipality engaged in work therefor and while acting in the line of his or her duty . . . .

Ala. Code § 11-47-190.

The proper vehicle to challenge the sufficiency of the factual averments in the Amended Complaint would have been a Rule 12(b)(6) motion. *See* Fed. R. Civ. P. 12(b)(6). However, even if the City's argument had been raised in a timely Rule 12(b)(6) motion, it would have failed for two reasons. First, the statute does not require that the agent, officer or employee be named, only that such person be the actor. Second, the Amended Complaint incorporates, for example, allegations of neglect by the City's housing inspector (specifically) and by the City's "employees" (generally) to provide notice of the demolition to Velocity. (*See* Am. Compl. ¶¶ 5, 20.)

The present focus – at the summary judgment stage – is on the evidence. Significantly, the City does not argue that the *evidence* fails to attribute the damage to the Property to a City "agent, officer, or employee." Accordingly, the City's argument that the requirements of § 11-47-190 have not been met is insufficient for obtaining summary judgment.

D.   **Whether the § 1983 Municipal Liability Claim Goes Forwarad**

Citigroup also brings a § 1983 claim, asserting that the City had a policy or custom of inadequately training its employees on how to conduct title examinations and that this failure to train caused its constitutional injuries. The City argues that the § 1983 claims fail because there is "no evidence" that the City "ha[d] a custom or policy of purposefully failing

17

to notify a mortgagee" of a demolition. (Def. Mot. 9.) The City argues that "an employee simply overlooked . . . Velocity upon searching the Montgomery County Probate Records when sending the various demolition notices[,]" and that this "isolated incident . . . is insufficient to prove the existence of an official policy or custom" under § 1983. (Def. Mot. 9-10; *see also* Def. Reply 9.)

"A city may only be held liable under 42 U.S.C. § 1983 when the injury caused was a result of municipal policy or custom." *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009). This "'may include a failure to provide adequate training if the deficiency 'evidences a deliberate indifference to the rights of [the city's] inhabitants.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). "Deliberate indifference may be established by a pattern of constitutional violations, or even by a single decision under "'appropriate circumstances.'" *Bruce v. Beary*, 498 F.3d 1232, 1249 (11th Cir. 2007) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) (internal citation omitted)).

The court agrees with the City that there is an absence of evidence of a pattern of prior constitutional violations. Citigroup argues that "[t]his is not the first time the City has demolished or tried to condemn or demolish private property without providing proper notice to all parties as required by statute." (Pl. Resp. 13.) As its sole support for this argument, Citigroup cites a court case, brought by an individual against the City of Montgomery, with a "CV" number, and asserts that this case "involved a very similar fact situation." (Pl. Resp. 13.) Citigroup did not attach a copy of any of the pleadings or the judgment, if one

was entered, and it did not indicate whether this case was filed in federal or state court. The court was unable to find any record of the case on Westlaw or in this district's system for case management and electronic case filing (CM/ECF). Contrary to Citigroup's assertion, there is no evidence of a "reoccurring problem" (Pl. Resp. 13), and no way to evaluate whether the phantom case cited by Citigroup is of any *evidentiary* value in this case.[10]

The City, however, has not built a record sufficient to evaluate whether this case presents an "appropriate circumstance[]" for imposing municipal liability without evidence of a pattern of constitutional violations. *Bruce*, 498 F.3d at 1249 (internal quotation marks and citation omitted). For one, it attempts to rely upon Ms. Brunson's deposition testimony as evidence pertaining to what it contends are adequate training procedures (Def. Reply 3), but neglects to file the deposition excerpts. Hence, the facts viewed in the light most favorable to Citigroup establishes that there was a complete absence of any training given to housing inspectors on how to conduct title examinations. For another, the City stops its legal analysis short, failing to address or even mention any case discussing Citigroup's alternative avenue for proving notice. While admittedly Citigroup faces a sizeable hurdle in showing such an appropriate circumstance, *see generally Gold v. City of Miami*, 151 F.3d 1346, 1350-52 (11th Cir. 1998) (discussing "obvious need"), the court declines to adopt arguments, at the summary judgment stage, which suffer from lack of factual development

---

[10] Even if this alleged prior lawsuit were of evidentiary substance, it is a rare case when a single previous incident is sufficient to place a municipality on notice of "widespread abuse" constituting deliberate indifference. *See Gold v. City of Miami*, 151 F.3d 1346, 1351-53 (11th Cir. 1998).

and legal analysis of those facts. Rather, the court has the discretion, which it will exercise here, to permit the § 1983 claim to proceed to trial, which will allow the claim to be decided on a more complete factual record. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Neither do we suggest that the . . . trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial."). Summary judgment, therefore, is due to be denied on the § 1983 claim.

## VI. CONCLUSION

Based upon the foregoing, all of Citigroup's claims are proceeding to trial. The City's Motion for Summary Judgment (Doc. # 26) is DENIED.

DONE this 18th day of January, 2011.

                                            /s/ W. Keith Watkins
                                       UNITED STATES DISTRICT JUDGE